UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Michael C. Antonelli, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 04-1180 (CKK) |
| | : | |
| Bureau of Alcohol, Tobacco, | : | |
| Firearms & Explosives, *et al.*, | : | |
| | : | |
| Defendants. | : | |

MEMORANDUM OPINION

This action, brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is before the Court on defendants' second motion for partial summary judgment. The motion is brought on behalf of the United States Coast Guard, Customs Service, and the Internal Revenue Service ("IRS"). Upon consideration of the parties' submissions and the relevant portions of the record, the Court will grant in part and deny in part defendants' motion with respect to these components.[1]

I.  FACTUAL BACKGROUND

The following facts are taken from defendants' Second Statement of Material Facts Not in Genuine Dispute and supporting declarations and Plaintiff's Response to Defendant's Second Partial Motion for Summary Judgment ("Pltf.'s Opp.") and supporting exhibits. In November 2001, plaintiff requested records from the Coast Guard pertaining to himself. Searches of certain offices in November 2003 yielded no responsive records. Eventually in 2003, the National Maritime Center located "an electronic record indicating there was a merchant mariner's file for plaintiff but did not respond . . . because they did not have an address." Deft.'s Facts ¶ 19.

---

[1] The complaint names as defendants 16 federal agencies or agency components.

Following a search in November 2004, during the course of this litigation, defendants retrieved the previously located record from the Federal Records Center and provided a copy to plaintiff.

By letter dated November 7, 2001 addressed to the Customs Service, plaintiff requested records "in reference to my name." Pltf.'s Ex. 17. By letter dated January 29, 2002, he appealed the "subtle denial of access" because "Customs never responded." Pltf.'s Ex. 18. By letter of August 3, 2002, plaintiff submitted another appeal based on the Customs Service's "inaction in responding to my request." Pltf's Ex. 19. By letter dated September 6, 2002, the Customs Service acknowledged plaintiff's August 3 letter and cited "resource constraints" for its inability "to process appeals on a timely basis." Pltf.'s Ex. 20. By letter dated October 8, 2002, the Customs Service responded to plaintiff's August 3 letter by seeking information about and copies of his November 7 request and January 29 appeal so that it could "contact the relevant parties within Customs Service and then proceed to a disposition of your appeal." Pltf.'s Ex. 21. Apparently in response to this lawsuit, the Customs Service searched its files for plaintiff's request dated November 7, 2001. It located neither a request nor an appeal from plaintiff after January 2000. Deft.'s Facts ¶¶ 23-25.

In November 2001, plaintiff requested records pertaining to himself from the IRS. By letter of November 27, 2001, plaintiff was told to provide additional information. In January 2003, plaintiff requested IRS records pertaining to James Valona located in the Milwaukee, Wisconsin district. By letter dated May 22, 2003, plaintiff was told that his request "did not meet the procedural requirements for a perfected request. . . ." Deft.'s Facts ¶ 34. Apparently in response to this lawsuit, the IRS searched its files for any "perfected FOIA requests," but located none during the relevant time period. Id. ¶¶ 36-39.

## II. STANDARD OF REVIEW

Defendants move for summary judgment on the claims against the Customs Service and the IRS on the ground that plaintiff failed to exhaust his administrative remedies. They assert that the claim against the Coast Guard is moot. The Court will review the motion under the standards for summary judgment set forth in the Memorandum Opinion issued July 25, 2005.

## III. DISCUSSION

1. <u>Coast Guard Records</u>

Following searches of "the offices where records would most likely be found," Declaration of Donald Taylor ("Taylor Decl.") ¶ 3, the Coast Guard eventually released to plaintiff "an electronic record" located in the Merchant Mariner Licensing & Documentation Database." *Id*. ¶ 4.[2] Defendants seek dismissal of the claim against the Coast Guard on the ground that all responsive records, *i.e.*, records pertaining to plaintiff, were produced. Plaintiff appears at first blush to challenge the Coast Guard's search for records, but he then asserts that the department "only did a proper search after suit was filed." Pltf.'s Opp. at 2 (emphasis omitted). Plaintiff maintains that genuine issues of material fact exist, but he has not identified any. To the extent that plaintiff challenges the Coast Guard's search for records, the Court finds from Taylor's description of the search, as supported by the declarations of Peggy Celestin, Daniel R. Meek, and Donald Johnson, that the Coast Guard performed a search reasonably calculated to locate responsive records. Absent any evidence of bad faith, the Court will grant summary judgment to defendants with respect to the Coast Guard records.

---

[2] Unless otherwise specified, defendants' declarations are attached as exhibits to their Second Partial Motion for Summary Judgment.

    2.   Customs Service Records

In Count 62 of the complaint, plaintiff alleges that he requested from Customs Service "all information in any way connected to his name." Complaint at 36. Plaintiff alleges that by letter of January 29, 2002, he submitted an administrative appeal based on Custom Service's "failure . . . to respond to his request of November 7, 2001," and followed up with another letter dated August 3, 2002. *Id*. By letter dated September 6, 2002, Customs Service acknowledged receipt of plaintiff's August 3 letter. In a letter dated October 8, 2002, Customs Service responded to the appeal by requesting information about "the substance of [plaintiff's] prior requests." *Id*. Plaintiff alleges that by letter dated October 15, 2002, he provided a copy of his November 7 request, but heard nothing more from Customs Service. *Id*.

Defendants aver that Customs Service searched its files to determine if it received the request at issue and found no record of it. Declaration of Gloria L. Marshall ¶¶ 4-5. Plaintiff has provided what he avers to be "true and correct copies of the actual letters that I either mailed to or received from the United States Customs Service." Pltf.'s Opp. at 4, Exhibits 17-21. He points to the letters of October 8, 2002 (Ex. 21) and September 6, 2002 (Ex. 20), as "[c]oncrete factual evidence that CUSTOMS did get my appeal of August 3, 2002." *Id*. While that may be true, the October 8 letter also supports defendants' claim of not having received the FOIA request. Specifically, the letter informed plaintiff that "determinations regarding your appeal" could not be made because the August 3 letter "[did] not indicate[] to whom you sent [the November 7 request and January 29 appeal] and no copies of such correspondence were included with your [August 3] appeal letter. Moreover, you did not indicate what information you sought in those requests." Pltf's Ex. 21. The letter invited plaintiff to "inform us as to whom you sent these original requests [and] what those requests concerned" and to provide copies so that "the relevant parties within the Customs Service" could be contacted and the appeal processed. *Id*.

4

Plaintiff alleges in the complaint that he responded to Customs Service's directive by letter dated October 15, 2002, in which he enclosed the November 7 request. He has not proffered the letter as evidence and therefore has not credibly refuted the Customs Service's sworn declaration supporting its claim that it never received the FOIA request at issue.

As plaintiff was advised in the Order of January 11, 2005, in opposing a summary judgment motion, he may not rely on unsupported statements but must instead set forth competent evidence sufficient to present a genuine issue of material fact. Plaintiff has produced no evidence from which it may be reasonably found or inferred that Customs Service received his FOIA request dated November 7, 2001, either initially or in response to the October 8 directive. The Court therefore will grant defendants' motion with respect to the request for Customs Service records based on the failure to exhaust administrative remedies.[3] *Cf. Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) ("To permit [plaintiff] to ignore the OIP's directive [regarding a premature administrative appeal] would cut off the agency's power to correct or rethink initial misjudgments or errors and frustrate the policies underlying the exhaustion requirement") (internal citation and quotation marks omitted).

---

[3] Although defendants have not brought their motion under Fed. R. Civ. P. 12(b)(1), they suggest that plaintiff's failure to exhaust administrative remedies relinquishes this Court of subject matter jurisdiction. *See* Deft's Mem. at 3-4. The District of Columbia Circuit has made it clear that while "as a jurisprudential doctrine, failure to exhaust precludes judicial review," it is not a jurisdictional barrier to such review. *Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003) (directing on remand that the district court dismiss the complaint arising from an unexhausted claim under Fed. R. Civ. P. 12(b)(6)). Thus, the Court could proceed notwithstanding plaintiff's failure to exhaust if it determines that the "purposes and policies underlying the exhaustion requirement" would not be undermined by reaching the merits. *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). To proceed where the agency, through no fault of its own, has never had the opportunity to act on plaintiff's FOIA request would not only undercut the exhaustion requirement but would also encourage circumvention of the administrative process simply by filing a lawsuit.

3. <u>Internal Revenue Service Records</u>

In Count 65 of the complaint, plaintiff alleges that by letter dated "November 7, 2002," he requested IRS records "in connection to his name."[4] Complaint at 37. He was "advised that he had not established his identity . . . By letter to the [IRS] Chicago Office, plaintiff provided [it] with more than enough specific information within which to conduct the search for the records requested and advised the IRS that he had provided a sworn statement as to his identity and any information that could possibly be needed by IRS to decipher his identity." *Id*. Plaintiff alleges that he filed an administrative appeal by letters dated February 11, 2002, and August 3, 2002. *Id*. In Count 66, plaintiff alleges that by letter dated January 31, 2003, he requested IRS records pertaining to James J. Valona, for which he had provided Valona's written authorization for release of records. *Id*. at 38. "The IRS [asked plaintiff to] agree to pay fees and to perfect his request and send it to the Milwaukee Disclosure Office of the IRS." *Id*. Plaintiff alleges that "[b]y perfected request dated June 3, 2003, plaintiff advised the Milwaukee Office of the IRS that he would pay fees[,]" but the "IRS never responded to this perfected request." *Id*.

Defendants assert that plaintiff failed to exhaust his administrative remedies with the IRS by submitting a proper FOIA request. They argue that plaintiff's first-party request for records failed to establish his identity. The record belies this argument. In response to plaintiff's request, the IRS sent him a list of requirements needed to perfect his request. Declaration of Suzette Darby-Peel ("Darby-Peel Decl."), Attachment B. To establish "identity and [] right of access," a first-party requester must either provide a notarized signature or "[i]n lieu of a notarized statement [the requester] must provide a sworn statement as to your identity, under the

---

[4] The request letter is dated November 7, 2001. *See* Pltf.'s Opp., Ex. 7.

penalty of perjury. . . ." *Id*. Plaintiff's request complied exactly with the sworn statement requirement. Pltf.'s Ex. 7 (FOIA request); *cf* Attachment B at 3 ¶ 5(A) ("Example"). The IRS therefore was obligated to process the request. Defendants' motion for summary judgment with respect to plaintiff's claim for first-party IRS records will be denied

Defendants argue that plaintiff's third-party request for records about James J. Valona was incomplete because it failed to specify the records sought and include the taxpayer's social security number. Memorandum of Points and Authorities in Support of Defendants' Second Partial Motion to Dismiss or, in the Alternative, for Summary Judgment at 9. Plaintiff "request[ed] a copy of all records in the Milwaukee, Wisconsin district of the IRS in any way connected to, related to or even remotely in reference to James Valona." Pltf.'s Ex. 14. By letter dated May 22, 2003, the IRS informed plaintiff that it could not "honor the request" without plaintiff "specify[ing] exactly what records you wish to receive by year, and include the Social Security Number of the taxpayer." Pltf.'s Ex. 16. The latter reason is unfounded because Valona's social security number appears in the release authorization form. Pltf's. Ex. 15. The letter also informed plaintiff about the requirement that he make "a firm commitment to pay search and copy fees. . . ." Pltf.'s Ex. 16. Plaintiff was told to "perfect your request and forward it within 30 days" to the Milwaukee Disclosure Office." *Id*. Following a search of its database, the IRS "determined that the plaintiff did not perfect his FOIA request dated January 31, 2003." Declaration of Patricia Williams ¶ 11.

Plaintiff does not provide any documentation that refutes defendants' evidence reasonably inferring that he did not respond to the IRS' May 22 letter. Specifically, he has not proffered the

letter of June 3, 2003, that he alleges in the complaint constituted his "perfected request."[5] Complaint at 38. The Court therefore will grant defendants' motion with respect to the request for IRS records pertaining to James Valona based on the failure to exhaust administrative remedies.

For the preceding reasons, defendants' second motion for partial summary judgment is granted in part and denied in part. A separate Order accompanies this Memorandum Opinion.

_____s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: July 28, 2005

---

[5] Plaintiff alleges only that in the June 3 letter, he "advised the Milwaukee Office of the IRS that he would pay fees." Complaint at 38. He does not address the office's request for specificity; thus, it is questionable whether the letter, if received, would have constituted a perfected request.