UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Michael C. Antonelli,                    :
                                         :
                Plaintiff,               :
        v.                               :          Civil Action No. 04-1180 (CKK)
                                         :
Bureau of Alcohol, Tobacco,              :
Firearms & Explosives, *et al.*,         :
                                         :
                Defendants.              :

MEMORANDUM OPINION

This action, brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is

before the Court on defendants' third motion for partial summary judgment.  The motion is

brought on behalf of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATFE"), and

the Bureau of Prisons ("BOP").  Upon consideration of the parties' submissions and the relevant

portions of the record, the Court will grant in part and deny in part defendants' motion with

respect to these components.[1]

I.  FACTUAL BACKGROUND

 The following facts are taken from defendants' Third Statement of Material Facts Not in

Genuine Dispute and supporting declarations, the Complaint, and Plaintiff's Response to

Defendant's Second Partial Motion for Summary Judgment ("Pltf.'s Opp.") and supporting

exhibits.

1.  ATFE Records

By letter dated November 5, 2001, plaintiff requested ATFE records pertaining to him

---

[1]  The 68-Count complaint names as defendants 16 federal agencies or agency
components.  Eleven defendants will remain after the resolution of this motion.

created since January 1, 1996.  ATFE informed plaintiff by letter of January 7, 2002, that a

search of its Criminal Record System identified records created in 1977 that were destroyed

pursuant to the National Archives and Records Administration Record Retention Guidelines.

ATFE invited plaintiff to provide additional information that may assist it in locating post-1996

records.  Def't's Facts ¶ 2.  In an appeal letter dated July 4, 2002, plaintiff attached "an ATF

Receipt for Property provided to a Ms. Nancy Antonelli in connection with an investigation

titled: Alsip Bombing Investigation."  *Id.* ¶ 7.  This led to ATFE's "discovery of responsive

material."  *Id.* ¶ 8.  By letter dated July 15, 2002, plaintiff was informed about the material and

"further advised that to achieve maximum access to the records a notarized authorization from

his ex-wife would be beneficial; otherwise, the Disclosure Division would process the request as

a thirty-party request."  *Id*.  By letter dated August 2, 2002, plaintiff "indicated that he was

attempting to secure a notarized authorization from his ex-wife but in the interim" informed

ATFE to proceed as a third-party request.  *Id*. ¶ 9.  By letter dated August 21, 2002, ATFE

informed plaintiff that it was awaiting the notarization before processing, but, on September 5,

2002, it received a letter from plaintiff dated August 28, 2002, advising it to proceed without his

ex-wife's authorization, *Id*. ¶¶ 10-11.  By letter dated September 11, 2002, ATFE denied

plaintiff's third-party request under the Privacy Act, 5 U.S.C. § 552a, and FOIA exemption 7(C)

by neither confirming nor denying the existence of such records.  *Id*. ¶ 12.

On administrative appeal, plaintiff asserted that "he was seeking the file 'Alsip Bombing

Investigation' and that his ex-wife's involvement with the investigation was only tangential."  *Id*.

¶ 13.  ATFE reversed its denial decision and conducted a search for records "connected to

Investigation Number 772045-01-0018 (Alsip Bombing Investigation)."  *Id*. ¶ 14.  It located

responsive records but denied plaintiff's request under FOIA exemption 7(A).  *Id*.  By letter

dated October 1, 2002, plaintiff provided ATFE with Nancy Antonelli's notarized authorization

for release of records and requested records pertaining to her.  *Id*. ¶ 15.  By letter dated October

10, 2002, ATFE informed plaintiff that it located no responsive records and advised him about

his appeal rights.  Plaintiff appealed the determination by letter dated October 17, 2002.  *Id*. ¶ 16-

17.

On June 20, 2002, plaintiff requested ATFE records pertaining to himself.  By letter dated

August 1, 2002, ATFE informed plaintiff that a search "revealed that the records he requested

were destroyed in 1999 in accordance with the Bureau's general record schedule."  *Id*. ¶ 20.

Plaintiff unsuccessfully appealed the decision.  *Id*. ¶¶ 21-23.

On November 30, 2002, plaintiff requested ATFE records pertaining to James Valona,

who had provided a Privacy Act waiver.  By letter dated December 21, 2002, ATFE informed

plaintiff that it located no responsive records.  In his appeal letter dated January 22, 2003,

plaintiff suggested that records pertaining to Valona may be contained in his criminal

investigative file.  *Id*. ¶ 26.  By letter dated January 27, 2003, ATFE informed plaintiff that it did

not search plaintiff's criminal investigative file because "that file was previously requested by

plaintiff and denied. . . . Furthermore, an Assistant United States Attorney had advised ATF that

the investigation related to that file was still open."  *Id*. ¶ 27.  Plaintiff unsuccessfully appealed

this determination.  *Id*. ¶¶ 28-30.  Similar events unfolded as to plaintiff's requests for records

about Robert Bily, ¶¶ 31-37, Nicholas Bernth, ¶¶ 38-42, Ronald Antonelli, ¶¶ 43-47, Susan

Marie Antonelli, ¶¶ 58-62, Nicholas Michael Cronin, ¶¶ 63-67, Jason Cronin, ¶¶ 68-72, and

Michael Anthony Cronin, ¶¶ 73-77.

In Count 7 of the complaint, plaintiff alleges that by letter of December 7, 2002, he requested records pertaining to Frederick Miller.  In Count 8, plaintiff alleges that by letter dated December 6, 2002, he requested records pertaining to Patrick Gerard Cronin.  In each instance, plaintiff alleges that he appealed "the no records response."  Complaint at 7.  In response to this lawsuit filed on July 14, 2004, ATFE conducted a search for plaintiff's FOIA requests made during the past five years.  It located no requests or appeals for Miller or Cronin records.  Deft.'s Facts  ¶¶ 48-51.

By letter dated April 15, 2003, plaintiff requested ATFE records pertaining to Edward Omar Spearman.  By letter dated May 12, 2003, ATFE informed plaintiff that it had located responsive records but was withholding them under FOIA exemption 7(A).  *Id*. ¶ 53.  Plaintiff unsuccessfully appealed the determination.  *Id*. ¶¶ 54-56.  During the course of this litigation, ATFE determined that it could now "release [] the first 100 pages provided to plaintiff in a separate FOIA response [and that] plaintiff should be receiving the first 100 pages soon with instruction on how to receive the additional 7,328 responsive pages once ATF receives the associated copying fee of $732.80."  *Id*. ¶ 57.

## 2.  BOP Records

On July 31, 2002, the Executive Office for United States Attorneys ("EOUSA") referred 25 pages of documents to BOP for processing and a direct response to plaintiff.  BOP assigned the referral Request No. 2002-08514.  By letter dated September 10, 2002, BOP released 20 pages in their entirety and withheld five pages in their entirety under FOIA exemptions 5 and 7(C).  *Id*. ¶ 82.  On March 17, 2003, the FBI referred five documents to BOP for processing and direct response to plaintiff.  BOP assigned the referral Request No. 2003-04556.  By letter dated

June 12, 2003, BOP released 23 pages, withholding information from seven pages under

exemptions 7(C), 7(E) and 7(F).  BOP withheld seven pages and plaintiff's presentence

investigation report in their entirety under exemption 7(F).  Deft's Facts ¶ 85.

On January 8, 2002, plaintiff requested BOP records pertaining to him "since he 'first

came into federal custody on September 15, 1978, to this instant date.'" *Id*. ¶ 86.   Upon

reviewing his inmate file and narrowing his request, plaintiff received 134 pages from his

"Central File and Judgement[sic] and Commitment file."  *Id*. ¶ 94.  Following an appeal, plaintiff

was provided his mental health records on July 11, 2002.  *Id*. ¶ 100.

On December 10, 2002, plaintiff requested from BOP taped telephone conversations

made to two telephone numbers between October 16, 2001 and July 15, 2002, from the

Metropolitan Correctional Center in Chicago.  A search yielded 74 phone calls.  By letter of

January 24, 2003, BOP informed plaintiff about an estimated processing fee of $392 that he was

required to pay in advance of its processing the request.  *Id*. ¶ 104.  Plaintiff was informed that

otherwise he could modify his request to reduce the estimated fee.  *Id*.  BOP told plaintiff that it

"would hold in abeyance any further action on this request until it had received his response."  *Id*.

BOP "records indicate [that] plaintiff has made no attempts to narrow his scope nor has he

provided advance payment as required."  *Id*. ¶ 105.  Plaintiff unsuccessfully appealed the fee

calculation.  *Id*. ¶¶ 106-07.

On February 5, 2004, plaintiff requested "all records, within the entire Bureau of Prisons

that is in any way connected to, related to, or even remotely referenced to Nancy Antonelli."  *Id*.

¶ 108.  He specifically requested searches of his central and investigative files at certain facilities.

*Id*.  BOP assigned this Request No. 2003-04107.  Plaintiff was informed that he could arrange to

review the non-exempt portions of his central file, but that his request for investigative records about Nancy Antonelli was considered "overly broad." *Id*. ¶ 109. He was told "to provide additional information such as the location of the investigation, the date of the subject matter of the incident being investigated, or other information to assist staff in locating responsive documents." *Id*. As to the non-exempt information in his central file, plaintiff was informed by letter of April 29, 2004, that 34 pages of responsive records were located. Eventually, BOP released 31 pages in their entirety and two pages with redactions pursuant to FOIA exemption 7(C). BOP withheld one page in its entirety under FOIA exemption 5. *Id*. ¶ 115.

On March 10, 2004, plaintiff requested a letter from BOP to Chief Judge Charles Kocoras. BOP released an unsigned copy of the letter in its entirety by letter dated March 30, 2004. *Id*. ¶ 120.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The FOIA requires a federal agency to release all records responsive to a request except those protected from disclosure by one or more of nine enumerated exemptions. *See* 5 U.S.C. § 552(b). This Court has jurisdiction under the FOIA "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); *see Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980). The Court may award summary judgment in a FOIA case solely on the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are

not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*,

484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

## III.  DISCUSSION

### 1.  ATFE Records

Plaintiff's claims arising from his requests for ATFE records are set forth in Counts 1

through 13 of the complaint.  Count 1 concerns plaintiff's request for records about him "that the

ATF has or had in its possession since January 1, 1996 that is in any way connected to, related to,

or even remotely in reference to his name."  Complaint at 3.  Defendants withheld responsive

records pertaining to the "Alsip Bombing Investigation" in their entirety under FOIA exemption

7(A).

FOIA Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes, but only to the extent that the production of such records or information"

would cause one of six enumerated harms.  5 U.S.C. § 552(b) (7)(A)-(F).  An agency must prove

that the withheld records were compiled for law enforcement purposes "before [withholding]

requested documents on the basis of any of [that exemption's] subparts."  *Pratt v. Webster*, 673

F.2d 408, 416 (D.C. Cir. 1982).  Under exemption 7(A), the agency may withhold from

disclosure "records or information compiled for law enforcement purposes, but only to the

extent that the production . . . could reasonably be expected to interfere with enforcement

proceedings."  5 U.S.C. § 552(b)(7)(A).

The withheld records were compiled during the course of an investigation by a local

police department, with ATFE assistance, of the bombing of a residence in Alsip, Illinois, in

April 2001.  Declaration of Averill P. Graham ("Graham Decl.") ¶ 83.[2]  They therefore

satisfy the threshold requirement of having been compiled for law enforcement purposes.

Exemption 7(A) requires a demonstration that "disclosure (1) could reasonably be expected to

interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated."

*Mapother v. Department of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).  "Reasonably

anticipated" means a "concrete prospective law enforcement proceeding."  *See Bevis v.*

*Department of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (*quoting Carson v. United States*

*Department of Justice*, 631 F.2d 1008, 1018 (D.C. Cir. 1980)).  According to Mr. Graham, the

withheld records consist of "'investigative notes' prepared by ATF during the course of the

[ongoing] investigation and include accompanying documents. . . . Any release of the

information . . . could reasonably be expected to interfere with prospective enforcement

proceedings."  Graham Decl. ¶¶ 84, 92.  The records "describe what has transpired in an

investigation during a particular reporting period along with detailed plans for future

investigative activity."  *Id*. ¶ 85.  They include witness statements, property transmittal reports,

incident reports and the like that if disclosed prematurely could, among other harms, "endanger"

witnesses, "discourage future witnesses from cooperating with ATF," and "reveal investigative

techniques and the scope, limits, and direction of the investigation."  *Id*. ¶¶ 86-91.  Plaintiff does

not dispute defendants' invocation of exemption 7(A) and therefore has failed to present a

genuine issue of material fact concerning defendants' otherwise proper justification for the

withholdings.  The Court will grant defendants' motion with respect to Count 1.

---

[2]    Unless otherwise specified, defendants' declarations are attached as exhibits to their
Third Motion for Partial Summary Judgment.

Counts 2-6 and 10-13 arise from defendants' failure to locate records responsive to plaintiff's requests for first-party records at an ATFE field office (Count 2) and third-party records (remaining counts).  When, as here, an agency's search for documents is questioned, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The agency prevails on a motion for summary judgment only where it shows "beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. United States Department of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  For purposes of this showing, the agency "may rely upon affidavits . . . , as long as they are relatively detailed and nonconclusory and  . . .  submitted in good faith."  *Id.* (citations and quotations omitted).  The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched. . . ." *Oglesby v. United States Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *accord Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

Mr. Graham avers that ATFE "executed an independent and thorough search for all responsive materials responsive to [] each of Plaintiff's FOIA requests. . . . all indices and file systems, including TECS, that would contain information pertaining to Mr. Antonelli's requests were reasonably searched."  Graham Decl. ¶ 93.  The Court is satisfied from Mr. Graham's description of ATFE's filing systems and the manner of the searches that ATFE conducted searches reasonably calculated to locate responsive records.  *See* Graham Decl. ¶¶ 94-109; 112-119.  Moreover, plaintiff has not credibly refuted defendants' declaration with respect to the first-

party records sought under Count 2 stating that the investigative file containing responsive records "dated back to [the] mid-1970's" and was destroyed in January 1999 "in accordance with ATF's Record Retention Schedule."  *Id.* ¶ 11.  Absent any evidence of agency bad faith, the Court will grant defendants' motion with respect to Counts 2-6 and 10-13.

In Count 7 of the complaint, plaintiff alleges that by letter dated December 7, 2002, he requested records pertaining to Frederick Miller who had provided a written authorization for the release of his records.  Complaint at 7.  Plaintiff alleges that ATFE located no responsive records and denied his appeal of that determination.  *Id.*  Plaintiff makes the same allegations in Count 8 with respect to a request dated December 6, 2002  for records about Patrick Gerard Cronin.  *Id.* at 7-8.  Defendants aver that in response to this lawsuit, "ATF's Disclosure Division retrieved for litigation purposes all FOIA requests made by Plaintiff over the last 5 years.  A complete and thorough search of the Disclosure Division's database, which captures all FOIA requests received by the Bureau, resulted in no records found [regarding a request for Miller's records]." Graham Decl. ¶ 51.  Moreover, "a search of OIP's appeal log reveals no existence of an appeal as to Mr. Miller's records."  *Id.* ¶ 52.  Mr. Graham avers the same about plaintiff's alleged request for Cronin's records.  *Id.* ¶¶ 53-54.  In his opposition papers, plaintiff disagrees with defendants' assertions and states that he sent the requests.  *See* Objections to Third Statement of Material Facts Purportedly Not in Genuine Dispute at 3 [Doc. No. 69]; Antonelli Affidavit at 2 [Doc. No. 69-2].  Plaintiff has attached the requests and completed authorization forms to his Motion for Partial Summary Judgment as to ATF [Doc. No. 60], Exhibits 59-62,[3] but he has not provided

---

[3]     By Order of May 10, 2005, the Court denied plaintiff's summary judgment motions and advised that they would be treated as part of plaintiff's opposition to defendants' respective summary judgment motions.

ATFE's alleged response, his "appeal[][of] the no records response of ATF to the OIP," and

OIP's alleged "affirm[ance][of] the action of the ATF."  Complaint at 7 (Counts 7 and 8).  Nor

has plaintiff provided any evidence that he mailed the requests.  Under the totality of the

circumstances, the Court finds that plaintiff has failed to present a genuine issue of material fact

with respect to the agency's receipt of his FOIA requests for records pertaining to Miller or

Cronin.  The Court therefore will grant defendants' motion with respect to Counts 7 and 8 based

on plaintiff's failure to exhaust administrative remedies by submitting his FOIA requests to the

agency and then administratively appealing the agency's denial of records.

In Count 9 of the complaint, plaintiff alleges that by letter dated "April 15, 2002," he

requested records pertaining to Edward Omar Spearman.[4]  He alleges that ATFE provided a

"blanket" denial, which he unsuccessfully appealed.  Complaint at 8.  ATFE withheld the

Spearman records under exemption 7(A).  Defendants aver that this claim is moot because it is

the subject of a separate FOIA lawsuit in which they are no longer asserting exemption 7(A) and

are releasing records "to Mr. Antonelli."  Graham Decl. ¶ 60 (citing Exhibit CCC).  Inexplicably,

defendants' exhibit is the commonly known *Fox-Neal* order this Court issued in *Spearman v.*

*Bureau of Alcohol, Tobacco & Firearms*, Civ. Action No. 03-1411 (CKK).  Plaintiff is not a

party to that lawsuit; thus, it is unclear how this claim can be moot.  Plaintiff's response is

inconsistent inasmuch as he "agree[s]" with defendants' position in his affidavit at page 2 (¶ 57),

but "disagrees with this statement" in his separate objection to defendants' statement of facts.

Pltf.'s Objections at 4 ¶ 57.  The Court will deny defendants' motion with respect to Count 9

---

[4]   In their statement of facts, defendants' erroneously identified the request as one for
records about "Edward Omar Antonelli," Facts ¶ 52, and in the complaint, plaintiff states the
wrong year of the request.  The request, dated April 15, 2003, seeks the release of "all records in
connection to Edward Omar Spearman."  Graham Decl., Exhibit XX.

without prejudice to reconsideration upon clarification of the issue.

    2. <u>BOP Records</u>

    Plaintiff's claims arising from his requests for BOP records are set forth in Counts 38-46 of the complaint.  In Count 38, plaintiff alleges that by letter dated November 5, 2001, he requested BOP records "in connection to his name."  Complaint at 23.  Plaintiff was informed about the opportunity to review his prison file at the location of his confinement.  Plaintiff alleges that by letter dated May 31, 2002, he "complained to BOP that he yet awaits review of his mental health records from Milan, Greenville and Rochester facilities."  *Id.*  He appealed BOP's "inaction" by letter of July 2, 2002.  By letter of July 11, 2002, BOP informed plaintiff "that 49 pages of mental health records were going to be provided him at the institution of his confinement."  *Id.*  By letter of August 6, 2002, plaintiff alleges that he "appealed the absence of the Greenville FCI records in the most recent release to him."  *Id.*  Plaintiff does not refute defendants' assertion that all of his mental health records were provided to him in the July 11 release and that the correspondence had "inadvertently only listed two of the institutions [FDC Milan and FMC Rochester]." Declaration of LeeAnn D. Tufte ("Tufte") ¶ 21 & Attachment K; *cf.* Antonelli Affidavit at 9 (agreeing with ¶ 21 of Tufte's declaration).  The Court will grant defendants' motion with respect to Count 38.

    In Count 39, plaintiff alleges that "[b]y letter to the SIS Lt Supervisor at USP Beaumont, Texas, [he] requested the records viewed by the SIA Wilson the day he arrived and was interviewed by the SIA at USP Beaumont."  Complaint at 24.  In Count 41, plaintiff alleges that "[b]y letter to the Health Services Administrator at USP Beaumont, [he] asked for a copy of the contract between the medical provider and the USP that exist[s] to provide medical services to the inmates."  *Id.*  Neither of these requests appears to be proper insofar as they were not

12

addressed to BOP's FOIA office.  Indeed, in response to the allegation in Count 39, the then-supervisory lieutenant stated that he did not receive such a request from plaintiff.  If he had, however, he "would have informed him to send an FOI Request to the Central Office in Washington, D.C."  Declaration of Linda Nutt ("Nutt Decl."), Exhibit A.  Similarly, in response to plaintiff's "Inmate Request to Staff" forming the basis of Count 41, BOP told him by notice dated September 3, 2002, that "[t]his document cannot be provided at the local level." *Id*., Exhibit B.  It provided an address in Washington, D.C. for plaintiff to submit a FOIA request and advised him about copying charges.  *Id*.  The FOIA obligates an agency to "make [requested] records promptly available" upon a request that "(i) reasonably describes such records and (ii) is made in accordance with published rules stating . . . procedures to be followed."  5 U.S.C. § 552(a)(3)(A).[5]  Plaintiff does not allege that he mailed his requests to BOP's FOIA office and therefore has not demonstrated that he followed proper procedures.  The Court therefore will grant defendants' motion with respect to Counts 39 and 41 based on plaintiff's failure to exhaust administrative remedies.

In Count 40, plaintiff alleges that "[b]y letter dated August 23, 2002, to the BOP in Washington, D.C., [he] requested all medical and mental health records and SIS files.  By letter dated August 26, 2002 to the Warden at USP Beaumont, Texas, [he] requested all medical, mental health, SIS and Disciplinary records."  Complaint at 24.  Plaintiff alleges that his associate warden, by response dated September 9, 2002, told him "to write the BOP in Washington, D.C. for the records," which he did by letter dated September 20, 2002.  He alleges

---

[5]   Pursuant to Department of Justice regulations set forth at 28 C.F.R. § 16.3(a), BOP advised plaintiff to address his request to "Director, Federal Bureau of Prisons, HOLC Room 738, 320 First Street, N.W. Washington, D.C. 20534."  Nutt Decl., Exhibit B at 2.

that BOP did not respond to his request. *Id.* Defendants aver that a search of "the BOP EPM

FOIA Database," where FOIA requests are logged, failed to locate plaintiff's request.

Declaration of Ruthlee Gowins ("Gowins Decl.") ¶¶ 3-4. Plaintiff "disagree[s]" with Ms.

Gowins, but he has not proffered any documentation to support his claim that he "did send said

request." Antonelli Affidavit at 7. Absent any evidence to contradict Ms. Gowins' declaration,

the Court will grant defendants' motion with respect to Count 40 based on plaintiff's failure to

exhaust administrative remedies.

In Count 42, plaintiff challenges BOP's invocation of FOIA exemptions "(b)(6) and

(b)(5)" to justify its withholding of five pages of information referred from the EOUSA. *See*

Complaint at 24-25.[6]   In its initial determination, BOP cited exemptions 5 and 6. Gowins Decl.,

Attachment B. On administrative appeal, the Office of Information and Privacy affirmed the

determination but invoked exemptions 5 and 7(C). *Id.*, Attachment C. Exemptions 5 and 7(C)

are at issue here.

BOP applied exemption 5 to a four-page document described as "a Litigation Report

written by an Attorney Advisor in support of civil litigation filed against the agency." Gowins

Decl. ¶ 8. Exemption 5 of the FOIA protects from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party . . . in litigation with

the agency." 5 U.S.C. § 552(b)(5). This provision applies to materials that normally are

privileged in the civil discovery context, including those protected by the attorney work

product privilege, the attorney-client privilege, and the deliberative process privilege. *See*

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also FTC v. Grolier, Inc.*, 462

---

[6]   EOUSA referred 25 pages to BOP, which released twenty pages in their entirety.
Gowins Decl. ¶ 6.

U.S. 19, 26 (1983) ("The test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance."); *accord Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).   BOP properly justified withholding the four-page document as protected by the attorney work-product privilege.  *See Hertzberg v. Veneman*, 273 F. Supp.2d 67, 75 (D.D.C. 2003) (attorney work product enjoys "nearly absolute privilege").  The Court will grant defendants' motion with respect to the four-page document forming part of the basis of Count 42.

BOP withheld a one-page document under exemption 7(C) "as it was written by staff detailing conversation with another staff member."  Gowins Decl. ¶ 8.  Exemption 7(C) shields law enforcement records to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C).  Defendants have proffered no evidence from which the Court may find for them on the threshold requirement, *i.e.*, that the information was compiled for law enforcement purposes.[7]  *See supra* at 7.  The Court therefore cannot reach the question of whether disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The Court will deny defendants' motion with respect to their invocation of exemption 7(C) to the one-page document forming the basis of the remaining part of Count 42.

In Count 43, plaintiff alleges that by letter dated October 29, 2002, to the warden of USP Beaumont, Texas, he requested  "copies of all taped [telephone] conversation to certain numbers

---

[7]      In their memorandum, defendants assert that "BOP asserted [exemption 7(C)] to withhold a memorandum written by staff in support to [sic] an investigation conducted regarding an escape (Count 42)," Def't's Mem. at 29, but they have provided no supporting evidence.  They cite paragraph 26 of the Nutt declaration, but that declaration does not address Count 42 of the complaint.

from his PIN." Complaint at 25. Plaintiff made a similar request to the wardens of MCC

Chicago and FTC Oklahoma. *Id*. MCC Chicago acknowledged plaintiff's request by letter of

November 15, 2002. *Id*. "By letter to the BOP in Washington, D.C. dated November 21, 2002,

plaintiff sent the letter from MCC Chicago . . . to the Office of the General Counsel of the BOP."

*Id*. The request to MCC Chicago dated October 29, 2002, is the only request of the three that is

before the Court, *see* Tufte Decl., Attachment Q, because it was the only one received by BOP's

FOIA office. By letter of January 24, 2003, in response to plaintiff's request, BOP assessed a

processing fee of $392 and advised plaintiff that advance payment was required before his

request would be processed. Tufte Decl. ¶ 25. Plaintiff was also told that he could narrow his

request to reduce the assessment. *Id*. Plaintiff unsuccessfully appealed the fee calculation, *id*.

¶ 27-28, as "an extravagant price." *Id*., Attachment T.

 Defendants move to dismiss Count 43 for failure to exhaust administrative remedies. The

payment or waiver of assessed fees or an administrative appeal from the denial of a fee waiver

request is a condition precedent to filing a FOIA claim in the district court. *Oglesby v. U.S. Dep't

of Army,* 920 F.2d 57, 65-67 (D.C. Cir. 1990); *Trueblood v. U.S. Department of Treasury, I.R.S.*,

943 F. Supp. 64, 68 (D.D.C. 1996) (*citing Pollack v. Department of Justice*, 49 F.3d 115, 120

(4th Cir.), *cert. denied*, 518 U.S. 1032 (1995)); *see also accord Judicial Watch, Inc. v. F.B.I.*,

190 F. Supp.2d 29, 33 (D.D.C. 2002). The FOIA provides for a fee waiver or a reduced fee upon

a requester's showing that "disclosure . . . is in the public interest . . . and is not primarily in the

commercial interest of the requester." 5 U.S.C. § 552(a) (4)(A)(iii). Plaintiff "agree[s]" that he

neither paid the fee nor narrowed his request to reduce the fee. Antonelli Affidavit at 10

(agreeing with Tufte Decl. ¶ 26). Moreover, plaintiff does not allege that he sought, and was

denied, a fee waiver. He appealed the assessment merely because he "believed it to be an

extravagant price." Tufte Decl., Attachment T.  In the absence of plaintiff's payment of the

assessed fee, the Court will grant defendants' motion with respect to Count 43 on the ground that

plaintiff has failed to exhaust his administrative remedies.

In Count 44, plaintiff challenges BOP's treatment of records referred from the FBI

(Request No. 2003-04556).  By letter dated March 17, 2003, "the FBI forwarded to the BOP five

[] documents that originated with this agency for a disclosure determination.  Portions of the

documents were excised by the FBI pursuant to [exemptions 7(C) and (7)(D)].  Also enclosed

were ten [] FBI documents . . . ."  Gowins Decl. ¶ 9. The BOP released 23 pages of material,

seven of which were released with redactions, and withheld 32 pages in their entirety.  Gowins

Decl. ¶ 10.  BOP invoked exemptions 7(C), 7(E) and 7(F) to justify the redactions.  It avers that

the "information revealed the identity of other individuals as well as investigative techniques and

procedures." *Id*. ¶ 11.  The redacted pages attached to the Gowins declaration (Attachment F)

demonstrate that, at least with respect to those pages, the information pertains to James John

Valona and "Organized Crime/Drug Money Laundering."  The information contained therein

therefore meets exemption 7's threshold requirement of law enforcement records.  Defendants'

declaration, however, provides no basis for the Court to find in their favor on the asserted harms.

Defendants' mere recitation of the statutory language does not satisfy its burden of proof.

In their Opposition to Plaintiff's Motion for Summary Judgment Filed on May 2, 2005

[Doc. No. 64], defendants attached a *Vaughn* index regarding the BOP records, but the Gowins

declaration makes no reference to the index and the index, which is not authenticated, appears to

be incomplete.  At the least, it does not correspond entirely with Ms. Gowins' averments.  For

example, regarding the FBI-referred records assigned Request No. 2003-04556, Ms. Gowins

avers that the FBI forwarded what appears to be a total of 15 documents.  Gowins Decl. ¶ 9.  She

avers further that BOP released "23 pages of documents" apparently in their entirety and seven pages with redactions and withheld "32 pages of documents" in their entirety.   *Id*. ¶ 10.   The *Vaughn* index lists under that request number only three documents of which a total of 39 pages were withheld in their entirety and seven pages were released with redactions.   In addition, the pages in Ms. Gowins' Attachment F do not appear to be reflected in the *Vaughn* index.   They reveal that BOP redacted some information under exemption 7(D), but neither the declaration nor the *Vaughn* index provides an explanation for those withholdings.   It is unclear if the pages contained in Attachment F are taken from the 15 documents referred from the FBI or are in addition to those records.   The Court may award summary judgment solely on the information provided in affidavits or declarations only when they clearly describe "the justifications for nondisclosure with reasonably specific detail [and] demonstrate that the information withheld logically falls within the claimed exemption. . . ."   *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).   Such is not the case here.   The Court therefore will deny defendants' motion with respect to Count 44.[8]

In Count 45, plaintiff challenges BOP's treatment of his request in March 2004 "for a copy of the letter sent plaintiffs [sic] sentencing judge explaining why plaintiff was not sent to FMC Rochester, MN as strongly recommended."   Complaint at 26.   Plaintiff admits that he "was provided a copy of the unsigned letter to his sentencing judge," *id*., which is consistent with BOP's declaration.   Nutt Decl. ¶ 40.   He challenges BOP's search because it failed to locate the signed letter.   The Court is satisfied from Ms. Nutt's efforts to locate a signed copy of the letter, *id*. ¶¶ 37-38, that BOP conducted an adequate search.   Plaintiff was provided an unredacted copy of the letter.   The Court therefore will grant defendants' motion to dismiss this count as moot.

_____

[8]   Defendants are directed to file a less confusing, detailed declaration and corresponding *Vaughn* index.

In Count 46, plaintiff challenges BOP's treatment of his request on February 5, 2004, for "all information in any way connected to Nancy Antonelli in possession of the BOP. . . ." Complaint at 27.  Plaintiff specifically requested searches of his central file and investigative files at certain BOP facilities.  By letter of March 12, 2004, BOP informed plaintiff that his request for a search of the investigative files did not "provide[] adequate information to permit [such] a search;" thus, his request was being construed only as one for records about Nancy Antonelli maintained in his central file.  Nutt Decl., Exhibit D.  Plaintiff was advised that pursuant to BOP Program Statement 1351.05, he could review his central file and arrange to obtain copies of responsive records.  *Id.*  He was also advised that he could resubmit his request for the investigative files "with specific information that adequately describes the requested record, such as the location of the investigation and the date of the subject matter of the incident being investigated."  *Id.*

By letter dated March 18, 2004, plaintiff clarified his request for investigative files, which prompted BOP eventually to conduct a search.  *Id.*  ¶¶ 19-21.  The searches located no additional records than those located in plaintiff's central file.  *Id.* ¶ 23.  BOP located 34 responsive records in plaintiff's central file.  By letter of November 26, 2004, it released 31 pages in their entirety and two pages with redactions pursuant to exemption 7(C).  It withheld one-page in its entirety pursuant to exemption 5.  *Id.* ¶ 17.  The one-page document is "an interagency electronic message . . . between BOP staff [about] possible criminal activity of plaintiff Antonelli, which was being discussed between two BOP staff."  Nutt Decl. ¶ 27.  Defendants aver that disclosure of the document "would reveal predecisional communications among government personnel . . . which would jeopardize the candid and comprehensive considerations essential for efficient and effective agency decision-making."  *Id.* ¶ 28.

Exemption 5 encompasses material protected from disclosure by the deliberative process privilege. *See supra* at 14-15. This includes "'documents reflecting advisory opinion, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Wilderness Soc'y v. United States Department of Justice*, 344 F. Supp.2d 1, 10 (D.D.C. 2004) (*quoting Department of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (other citation omitted). Defendants properly justified withholding the one-page document as deliberative process material. Defendants also properly justified redacting from the two-page release the name and telephone number of an employee of the United States Attorney's Office. Third-party identifying information is categorically protected by exemption 7(C)'s privacy provision absent a showing, not made here, of an overriding public interest warranting disclosure. *See Lesar v. U.S. Department of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Department of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. 1996) (finding the possibility of animosity toward FBI agents outweighed any possible benefit of disclosure); *Perrone v. FBI*, 908 F. Supp. 24, 26 (D.D.C. 1995) (citing cases) (protecting the names and identities of individuals of investigatory interest to law enforcement agencies and those merely mentioned in law enforcement files). The Court will grant defendants' motion on Count 46 with respect to the asserted exemptions.

Plaintiff challenges BOP's search for investigative files pertaining to Nancy Antonelli. When an agency's search for documents is challenged, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the

search for those documents was adequate." *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The agency prevails on a motion for summary judgment only where it shows "beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. United States Department of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  For purposes of this showing, the agency "may rely upon affidavits . . . , as long as they are relatively detailed and nonconclusory and  . . .  submitted in good faith." *Id*. (citations and quotations omitted).  The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched. . . ." *Oglesby v. United States Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *accord Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

BOP avers only that "staff at FCI Greenville, MCC Chicago, and the North Central Regional Office were contacted in an attempt to locate any responsive documents,"  Nutt Decl. ¶ 21, and "[s]taff at each facility responded that no responsive records were located." *Id*. ¶ 22.  It has proffered no declarations that describe the searches undertaken or the file systems searched.[9] In the absence of any evidence describing the search for investigative records pertaining to Nancy Antonelli, the Court will deny defendants' motion with respect to those records sought under Count 46.

3. Segregability of Records

The Court is required to make a finding as to whether defendants properly withheld documents in their entirety.  *See Trans-Pacific Policing Agreement v. United States Customs*

---

[9]    Ms. Nutt attaches to her declaration a form indicating that "K. Hueter" conducted a five minute search of an unspecified file.  Exhibit N.  This is wholly insufficient to satisfy defendants' burden of proof on the search issue.

*Service*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999).  The Court will defer its ruling on this issue

until the record has been supplemented.  Defendants are warned, however, that the Court is

not convinced from the *Vaughn* index that they properly justified withholding in their entirety

the presentence report (Request No. 2003-04556) pursuant to exemption 7(F) and the one-page

memorandum (Request No. 2002-8514) pursuant to exemption 7(C).  Those exemptions

routinely are applied to third-party identifying information.  Defendants are encouraged to

explain in its supplemental brief why those documents could not be released in redacted form.

    For the preceding reasons, defendants' motion for summary judgment is granted in part

and denied in part.  A separate Order accompanies this Memorandum Opinion.


                              _____s/_____
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge

Date: August 16, 2005