UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Michael C. Antonelli,                          :
                                               :
                    Plaintiff,                 :
        v.                                     :          Civil Action No. 04-1180 (CKK)
                                               :
Bureau of Alcohol, Tobacco,                    :
Firearms & Explosives, *et al.*,               :
                                               :
                    Defendants.                :

MEMORANDUM OPINION

This action, brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is

before the Court on defendants' sixth motion for partial summary brought on behalf of the

Federal Bureau of Investigation ("FBI").  Plaintiff cross moves for summary judgment on the

issue of exhaustion of administrative remedies.  Defendants have not raised exhaustion as a

defense to the claims pertaining to FBI records.  The Court therefore will deny plaintiff's cross

motion as moot.  Upon consideration of the parties' submissions and the relevant portions of the

record, the Court will grant defendants' motion in part and deny it in part.[1]

I.  BACKGROUND

The following facts are taken from defendants' Sixth Statement of Material Facts Not in

Genuine Dispute ("Facts) and the supporting declarations and exhibits.

By letter dated February 18, 2004, plaintiff requested from FBI Headquarters records

---

[1]  The 68-Count complaint names as defendants 16 federal agencies or agency
components.  Ten defendants remain.  Plaintiff's opposition to the pending motion [Doc. No. 83]
consists of the following: Response to Defendant's Sixth Motion for Partial Summary Judgment
[Doc. No. 87], Response to Sixth Statement of Material Facts [Doc. No. 98], Opposition to
Second Declaration of David M. Hardy [Doc. No. 100], and Declaration of Michael Antonelli
[Doc. No. 102].

pertaining to Susan Marie Antonelli a.k.a. Susan Cronin, who had provided written authorization

for the release of records.  The FBI searched the Central Records System ("CRS") at

Headquarters and the Chicago Field Office but located no responsive records.  In his

administrative appeal dated March 4, 2004, plaintiff suggested that his files may have references

to Susan and requested a search of "reference files of Michael Carmie Antonelli."  Facts. ¶ 3.

Plaintiff's appeal was denied by letter of April 18, 2005.

By letter dated February 20, 2004, plaintiff requested from FBI Headquarters records

pertaining to Jason Cronin, who had provided written authorization.  The FBI searched the CRS

at Headquarters and the Chicago Field Office but located no responsive records.  Plaintiff's

appeal of this decision was denied by letter of April 18, 2005.  Similar events unfolded with

respect to plaintiff's separate requests for records pertaining to Nicholas Michael Cronin and

Michael Cronin.  *See* Facts ¶¶ 9-16.

By letter dated January 31, 2004, plaintiff requested from FBI Headquarters records "that

your agency, the Milwaukee Field Office, the Chicago Field Office and the field offices located

near Oxford, Wisconsin, Rochester, Minnesota, Beaumont, Texas, and Greenville, Illinois has or

had in their possession in connection to Nancy Antonelli."  Facts ¶ 17.  By letter of February 19,

2004, FBI Headquarters informed plaintiff that the search for these records yielded no responsive

records and advised plaintiff of his appeal rights.  Plaintiff's appeals of the "no records"

responses from Headquarters and the Milwaukee and Chicago field offices were denied.  *See*

Facts ¶¶ 19-24.

By letter dated April 15, 2003, plaintiff requested from FBI Headquarters records

pertaining to himself and Edward Omar Spearman, who had provided written authorization.  A

search of the CRS files at FBI Headquarters located no records about Spearman.  In the decision

letter of May 5, 2003, plaintiff was advised that if he wanted a search conducted of the FBI's field offices, he would need to write directly to the appropriate field office.  In his appeal letter dated July 1, 2003, plaintiff protested the FBI's failure to search the Detroit office, which he had specifically mentioned in his request.  By letter of September 2, 2003, the Office of Information and Privacy (OIP) advised plaintiff that it was remanding his appeal to Headquarters for processing of documents subsequently located.  By letter of May 10, 2004, FBI Headquarters released 24 redacted pages of material.  It withheld information under exemption 7(C).  Plaintiff's administrative appeal was denied.

By letter dated November 5, 2001, plaintiff requested from the Chicago Field Office records pertaining to himself dating from January 1, 1996, to the present.  By letter of June 26, 2002, the Chicago Field Office released 15 of 54 pages located, with redactions.  It released an additional 19 pages by letter of February 18, 2004.  Plaintiff's appeal of these determinations was denied.  Plaintiff made the same request to FBI Headquarters.  By letter dated August 6, 2003, Headquarters released 19 of 66 pages located, with redactions under exemptions 6 and 7(C).  Plaintiff was informed that "several litigation files existed but were not processed [and was advised] to specifically request these documents if interested."  Facts ¶ 38.  Plaintiff requested those documents by letter of September 2, 2003.  Second Declaration of David M. Hardy ("2nd Hardy Decl.") ¶ 68.  By letter of November 18, 2003, OIP released an additional 25 pages and advised plaintiff that Headquarters "had opened a separate request based on plaintiff's request letter dated Sept. 2, 2003, and was currently processing five additional files for release."  Facts ¶ 40.  The appeal otherwise was denied.

By letter dated December 3, 2001, plaintiff requested records from the Milwaukee Field Office pertaining to himself dating from January 1, 1996.  2nd Hardy Decl. ¶ 70.  By letter of

December 10, 2001, the FBI informed plaintiff that it had searched the automated indices of the Milwaukee CRS but located no responsive records. *Id*. ¶ 71. In his administrative appeal dated December 23, 2001, plaintiff requested that his records be "cross referenc[ed]" to James Valona's records. *Id*. ¶ 72. The OIP remanded the appeal for an additional search, "specifically cross-references." *Id*. By letter dated August 19, 2002, the Milwaukee office informed plaintiff that it had located records but "[b]ased on a cursory review of the cross-reference documents[,] the FBI determined that the documents were in a main file currently pending in which plaintiff was the subject." *Id*. ¶ 75. The FBI withheld the documents in their entirety under exemption 7(A). *Id*. Plaintiff's appeal of this determination was denied.

By letter dated  December 7, 2002, plaintiff requested from the Milwaukee office records pertaining to himself and James Valona, who had provided a written authorization.  By letter dated January 29, 2003, the Milwaukee office released nine redacted pages of material.  It withheld information under exemptions 5, 7(C) and 7(D).  Facts ¶¶ 42-43.  Plaintiff's appeal of this determination was denied.

By letter dated May 9, 2005, the FBI referred five pages of material to the Drug Enforcement Administration ("DEA") for processing and a direct response to plaintiff.  DEA returned the pages to the FBI because "the pages could not be located in any DEA record system and did not appear to be DEA records."  Facts ¶ 46.  DEA recommended, however, that portions of the pages [] containing DEA information" be redacted under exemptions 7(D) and 7(F).[2]  *Id*.

---

[2]    Defendant does not state whether the FBI adopted this recommendation.  It will be directed to clarify the status of these records.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The FOIA requires a federal agency to release all records responsive to a request except those protected from disclosure by one or more of nine enumerated exemptions.  *See* 5 U.S.C. § 552(b).  This Court has jurisdiction under the FOIA "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B); *see Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 139 (1980).  The Court may award summary judgment in a FOIA case solely on the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

Defendants move for summary judgment on the ground that they released all reasonably segregable documents responsive to plaintiff's requests.  Plaintiff challenges the FBI's claimed exemptions and its search for records.

## III.  DISCUSSION

1. Claimed Exemptions

The FBI initially withheld information under FOIA exemptions 5, 6, 7(A), 7(C), and 7(D).  It subsequently determined that exemption 7(A) no longer applied and processed

thousands of pages, hundreds of which were released on April 7, 2005.  *See* 2nd Hardy Decl.

¶ 103.  Defendant advances arguments for withholding FBI documents under exemptions 2, 3,

7(E) and 7(F), *see*  Def't Mem. at 23-25, 35, but those exemptions do not appear to apply to the

release decisions at issue.  *Cf.* Def't Facts ¶¶ 29, 34, 36, 38, 40, 42.[3]  Rather, they appear to apply

to the April 7, 2005, release, to which plaintiff has not had the opportunity to respond.  Because

this release is not set forth in defendant's statement of facts, plaintiff reasonably questions the

relevancy of the statement that "[a]s of this date, the FBI has processed a total of 2,304 pages

responsive to plaintiff's multiple requests, and has released to plaintiff a total of 296 pages in

full, and 930 pages in part."  2nd Hardy Decl. ¶ 4.  *See* Pltf's Opp. [Doc. No. 100] ("Plaintiff

cannot decipher from this paragraph which requests declarant is speaking of . . . and asks for a

more definite statement as to exactly what requests and when these 2,304 pages relate to.").  To

the extent that defendants are seeking summary judgment on exemptions 2, 3, 7(E) and 7(F), the

motion is denied without prejudice to renewal upon clarification of their application to the

releases at issue, the April 7, 2005, release, or some other release not apparent from the current

motion, *e.g.*, the litigation files defendant processed as plaintiff's September 2, 2003, request.

*See supra* at 3.

### *Exemption 5*

Exemption 5 of the FOIA protects from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party  . . .  in litigation with

the agency." 5 U.S.C.  § 552(b)(5).  This provision applies to materials that normally are

privileged in the civil discovery context, including those protected by the attorney work

---

[3]  Releases were made by letters dated June 26, 2002, January 29, 2003, August 6, 2003, November 18, 2003, February 18, 2004, and May 10, 2004.

product privilege, the attorney-client privilege, and the deliberative process privilege.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also FTC v. Grolier, Inc.*, 462 U.S. 19, 26 (1983) ("The test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance."); *accord Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

The FBI withheld a one page "draft affidavit," 2nd Hardy Decl. ¶ 123, located in the Milwaukee field office, *id* ¶ 83, under exemption 5.  The affidavit "is unsigned and undated . . . there is no final, file-stamped version of the document which would indicate that it had been filed with the court." *Id.* ¶ 123.  The FBI determined that the affidavit was "deliberative in nature." *Id*.  To qualify under the deliberative process privilege, the withheld information must have been pre-decisional, *i.e.*, "generated before the adoption of an agency policy" and deliberative, *i.e.*, "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  Because the FOIA presumes that all records are subject to disclosure, the exemptions must be construed narrowly.  *Department of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). "[C]onclusory assertions of privilege will not suffice" to carry the agency's burden on exemption 5.  *Senate of the Commonwealth of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir.1987) (citation omitted).

Mr. Hardy describes the affidavit as "from a third party regarding an incident involving plaintiff." 2nd Hardy Decl. ¶ 123.  This vague description does not establish the threshold requirement that the document be an "inter-agency or intra-agency memorandum[]," by, for example, describing the source of the information as a government employee or agent. Moreover, nothing in the record establishes that the affidavit was prepared as part of the

deliberative process.  The Court therefore has no basis to conclude that disclosure of the affidavit

would "reveal the nature of deliberations."  *Judicial Watch, Inc. v. Department of Energy*, 412

F.3d 125, 131 (D.C. Cir. 2005).  Even if the document were to qualify as deliberative, the

deliberative process privilege does not extend to "purely factual material."  *Id*.  The FBI has

presented no evidence showing that the affidavit was reviewed for  purposes of determining

whether it contained factual material that could be excised from any exempt material and

released.  Summary judgment on the FBI's exemption 5 claim is denied.

*Exemptions 6 and 7(C)*

The FBI withheld third-party information under exemption 6 in conjunction with

exemption 7(C).  Exemption 6 protects information about individuals in "personnel and medical

files and similar files the disclosure of which would constitute a clearly unwarranted invasion of

personal privacy."  5 U.S.C. § 552 (b)(6).  All information that "applies to a particular

individual" qualifies for consideration under this exemption.  *U.S. Dep't of State v. Washington

Post Co.*, 456 U.S. 595, 602 (1982); *see also  New York Times Co. v. NASA*, 920 F.2d 1002, 1005

(D.C. Cir. 1990) (en banc); *Chang v. Dep't of Navy*, 314 F. Supp.2d 35, 42-43 (D.D.C. 2004).

Exemption 7(C) protects from disclosure  records compiled for law enforcement purposes to

the extent that their disclosure "could reasonably be expected to constitute an unwarranted

invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Both exemptions 6 and 7(C) require

the balancing of the strong privacy interests in the nondisclosure of third-party records against

any asserted public interests in their disclosure.  The responsive material consists of

"[i]nvestigatory records concerning plaintiff and other individuals to whom plaintiff sought

access [] compiled as a result of several criminal investigations conducted by the FBI,

including wire and mail fraud, and money laundering." 2nd Hardy Decl. ¶ 110. Responsive

records "relate to the investigation of a drug smuggling operation." *Id*. ¶ 132. Because the

responsive records are maintained in law enforcement files, the Court will address the FBI's

justification for the withholdings only under the "somewhat broader" protection of exemption

7(C). *Beck v. Department of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

The FBI redacted identifying information about FBI special agents and support

employees, other law enforcement personnel who assisted in the investigation of plaintiff, and

third-party individuals who either provided information to the FBI, were "merely mentioned" in

documents pertaining to plaintiff, were of investigative interest to the FBI, and/or had criminal

records or rap sheets. 2nd Hardy Decl. ¶¶ 135-140. Such information is "categorically exempt"

from disclosure under exemption 7(C), in the absence of an overriding public interest in its

disclosure. *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d

885, 896 (D.C. Cir. 1995). The FBI considered whether there was a "legitimate public

interest" in disclosing the information and discerned none. 2nd Hardy Decl. ¶ 134. It

therefore properly redacted the third-party information under exemption 7(C). Plaintiff has not

countered with any evidence of an overriding public interest. Summary judgment therefore is

granted with respect to the FBI's application of exemption 7(C).

*Exemption 7(D)*

Exemption 7(D) of the FOIA protects from disclosure those records or information

compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement authority in the course of a
> criminal investigation . . . information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). To properly apply Exemption 7(D), an agency must show either that a

source provided the information to the agency under an express assurance of confidentiality or that the circumstances support an inference of confidentiality. *U.S. Department of Justice v. Landano*, 508 U.S. 165, 179-81 (1993). To demonstrate an express assurance of confidentiality, defendant must present "'probative evidence that the source did in fact receive an express grant of confidentiality.'" *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998) (*quoting Davin v. U.S. Dept. of Justice*, 60 F.3d 1043, 1061 (3rd Cir. 1995)). "Such evidence can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Id*. When considering the existence of an implied assurance of confidentiality, the Court must inquire into "whether the particular source spoke with an understanding that the communication would remain confidential." *Landano,* 508 U.S. at 172. The government is not entitled to a presumption that all sources supplying information in the course of a criminal investigation are confidential sources. An implied assurance of confidentiality may be inferred, however, from the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target. *Id*; *see also Computer Professionals for Social Responsibility v. United States Secret Service*, 72 F.3d 897, 905-06 (D.C. Cir. 1996).

Defendant invoked exemption 7(D) to protect the identities of confidential informants and the information supplied. It asserts that it withheld information provided by one individual based on an "'express' assurance of confidentiality," 2nd Hardy Decl. ¶ 147, but has not provided any supporting evidence of such an assurance. Likewise, defendant has provided no evidence to sustain its claim of an implied assurance of confidentiality with respect to information  supplied

by certain individuals and a commercial business.  *See id*. ¶¶ 144, 146.  Summary judgment on these portions of defendant's exemption 7(D) claim is denied.

Defendant withheld information supplied by "source symbol numbered informants" and individuals assigned "a permanent confidential symbol number."  *Id*. ¶¶ 145, 149.  It explains that these numbers are assigned "to confidential informants who report to the FBI on a regular basis pursuant to an express assurance of confidentiality.  The confidential source file is unique to the particular confidential informant and is used only in documentation relating to that particular informant."  *Id*. ¶ 149.  Based on this evidence of established practice, the Court finds that defendant properly applied exemption 7(D) to the identities and information supplied by the coded sources.  Summary judgment is granted with respect to these withholdings.

2.  Adequacy of the Search

Plaintiff questions the adequacy of the search for records about Nancy Antonelli and Susan Marie Antonelli a.k.a. Susan Cronin.  When an agency's search for documents is challenged, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The agency prevails on a motion for summary judgment only where it shows "beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. United States Department of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  For purposes of this showing, the agency "may rely upon affidavits . . . , as long as they are relatively detailed and nonconclusory and  . . .  submitted in good faith."  *Id*. (citations and quotations omitted).  The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records

exist) were searched. . . ." *Oglesby v. United States Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); accord *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

Plaintiff does not question that defendant searched the "automated indices to the Central Records System . . . for [FBI Headquarters] and the Chicago Field Office" for records pertaining to Susan Antonelli.  2nd Hardy Decl. ¶ 6.  Nor does he question that defendant searched the CRS for records pertaining to Nancy Antonelli at Headquarters and the Milwaukee and Chicago field offices.  *Id*. ¶¶ 28, 32, 35.  Rather, plaintiff challenges defendant for failing to search its "I Files," which defendant describes as "shared computer [hard] drives used in field offices to hold preliminary work product. . . ."  Def.'s Reply [Doc. No. 112], 3rd Hardy Decl. ¶ 38.  According to Mr. Hardy, the "FBI considers requests for searches of its shared computer drives on a case-by-case basis."  *Id*. ¶ 39.  It "will attempt to conduct [] a search" from "very specific requests, [] if such a request is reasonable."  *Id*. ¶ 37.  Plaintiff did not request a search of such files  initially or on administrative appeal of the "no records" response.  *Id*., n.2.  The Court is convinced from defendant's description of the CRS, *see* 2nd Hardy Decl. ¶¶ 89-93, that a search of that system was reasonably calculated to locate responsive records.  Absent plaintiff's specific request for a search of the hard drives, defendant had no obligation under the FOIA to search them.

Plaintiff also claims to have "concrete factual evidence that the FBI has records in connection to Nancy Antonelli."  Pl.'s Res. [Doc. No. 98] at 2.  In response to this information, defendant conducted additional searches but located no responsive records.  3rd Hardy Decl. ¶¶ 40-41.  In view of the FBI's initial and subsequent searches, the Court concludes that its search was adequate and therefore will grant summary judgment on this issue.

III.  CONCLUSION

For the preceding reasons, defendants' motion for partial summary judgment on behalf of the FBI is granted in part and denied in part.  A separate Order accompanies this Memorandum Opinion.

_____ s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date:  February 16, 2006