UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Michael C. Antonelli, : | |
| : | |
| Plaintiff, : | |
| v. : | Civil Action No. 04-1180 (CKK) |
| : | |
| Bureau of Alcohol, Tobacco, : | |
| Firearms & Explosives, *et al.*, : | |
| : | |
| Defendants. : | |

MEMORANDUM OPINION

This action, brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is before the Court on defendants' fifth motion for partial summary judgment. The motion is brought on behalf of the Department of Justice's Criminal Division, the Drug Enforcement Agency ("DEA") and the United States Parole Commission ("USPC"). In addition, plaintiff has moved for partial summary judgment against the Criminal Division and the USPC on the issue of exhaustion of administrative remedies. The Criminal Division does not claim that plaintiff failed to exhaust his administrative remedies. Plaintiff's motion as to this defendant therefore is moot. Upon consideration of the parties' submissions and the relevant portions of the record, the Court will grant in part and deny in part defendants' motion for summary judgment and will deny plaintiff's cross motions for summary judgment.[1]

---

[1] The 68-Count complaint names as defendants 16 federal agencies or agency components. Eight defendants will remain. Plaintiff's opposition to the pending motion consists of the following separately filed documents: Response to Fifth Motion for Summary Judgment ("Pl.'s Res.") [Doc. No. 78], Declaration of Michael Antonelli, Instanter ("Antonelli Decl.") [Doc. No. 79], Response to Fifth Statement of Material Fact Not in Genuine Dispute ("Pl.'s Facts Res.") [Doc. No. 80], Memo in Support of Response to Fifth Partial Summary Judgment ("Pl.'s Mem.")[Doc. No. 82].

I.  BACKGROUND

1.  <u>Criminal Division Records (Counts 47-50)</u>

In June 1999, plaintiff requested records pertaining to himself.  The Criminal Division misplaced the original request but eventually processed it.  By letter of July 29, 2003, the Criminal Division informed plaintiff that it had located 19 responsive records.  It released 17 records in their entirety and withheld two records under FOIA exemptions 3, 5, 6 and 7(C).  Def.'s Fifth Statement of Material Facts Not in Genuine Dispute ("Facts") ¶ 7.  The Criminal Division further informed plaintiff that it had referred records to the Bureau of Prisons, the USPC and the Executive Office for United States Attorneys ("EOUSA").  The Office of Information and Privacy ("OIP") denied plaintiff's administrative appeal of the withheld pages.

By letter of March 12, 2003, plaintiff requested records pertaining to a grant of immunity for Daphenea Doreen Gibson in the criminal prosecution of James Wesley Reddix.  Plaintiff provided Reddix's waiver of release of records.  By letter of April 20, 2003, Criminal Division released one redacted document.  It withheld information under exemptions 3, 6 and 7(C).  It further informed plaintiff that it referred one document to EOUSA for processing and a direct response to plaintiff.  The OIP denied plaintiff's administrative appeal of the withheld information.

By letter dated April, 15, 2003, plaintiff requested records pertaining to himself and Edward Omar Spearman, who had provided a waiver.  Plaintiff clarified by letter of July 14, 2003, that he sought records "pertaining to Mr. Spearman only." Facts ¶ 17.  By letter of June 2, 2004, the Criminal Division informed plaintiff that it had located six documents.  It released four records in their entirety and one record with redactions.  It withheld one record in its entirety.

The Criminal Division withheld information under exemptions 5, 6, and 7(C). It informed plaintiff that it had referred one record to EOUSA and other records to OIP for processing and a direct response to him. On administrative appeal, OIP released by letter of August 16, 2004, "additional portions of one page" and otherwise affirmed Criminal Division's withholdings under exemption 5. *Id*. ¶ 20. As to the records referred to it, OIP withheld by letter of August 12, 2004, six documents in their entirety under exemptions 5, 6 and 7(C). By letter of November 17, 2004, OIP affirmed its decision on the referred records described as "plaintiff's request for documents concerning Edward Omar Spearman." Facts ¶ 23. By letter dated January 24, 2005, OIP released one of the previously withheld documents but maintained its position to withhold the remaining five in their entirety. Facts ¶ 42-43.

By letter dated January 31, 2003, plaintiff requested records pertaining to James Valona, who had provided a waiver. By letter dated July 29, 2003, Criminal Division informed plaintiff that it had located an index reference appearing to identify responsive records but that the file was destroyed pursuant to the records retention schedule. It also informed plaintiff that a previous file processed in response to Valona's request in 1992 had, too, been destroyed by "the six year destruction schedule for FOIA/PA request files." *Id*. ¶ 25.

2. <u>DEA Records (Counts 57-59)</u>

By letters dated November 9, 2001, and November 12, 2001, plaintiff requested DEA records pertaining to himself. By letter of January 15, 2002, DEA informed plaintiff that it had located eight investigative files that mentioned plaintiff. It informed plaintiff that if he wanted a search performed of those files, he should submit a letter promising to pay the estimated search fee of $392. In affirming DEA's response, OIP informed plaintiff by letter dated September 16,

2002, that he had mischaracterized his appeal as a "no records" response and that he should contact DEA about paying the fees if he wanted it to conduct a search of the investigative files. *Id*. DEA has no record of plaintiff's commitment to pay the fee. Facts ¶ 28.

By letter dated April 15, 2003, plaintiff requested DEA records pertaining to Edward Omar Spearman, who had provided a waiver. After clarifying the request, DEA informed plaintiff by letter of September 4, 2003, that "his request was denied." Facts ¶ 34. It withheld two pages of material in their entirety under exemptions 2, 7(C), 7(F) and Privacy Act exemption (j)(2). DEA referred four pages to the FBI for a direct response to plaintiff. *Id*. ¶¶ 34, 35.

By letter dated February 18, 2004, plaintiff requested DEA records pertaining to Susan Antonelli a.k.a. Susan Cronin, who had provided a waiver. By letter of April 1, 2004, DEA informed plaintiff that it had located no responsive records. OIP affirmed the decision on administrative appeal.

    3.  <u>USPC Records (Counts 51-53)</u>

By letter dated November 5, 2001, plaintiff requested USPC records pertaining to himself since January 1, 1996, and "Notice[s] of Action" since April 5, 1987. Eventually, by letter dated May 6, 2002, USPC released 493 pages of material "except those withheld on the basis of FOIA exemptions." Facts ¶ 51. Plaintiff did not appeal this determination.

By letter dated December 8, 2002, plaintiff requested records pertaining to James Valona. By letter of April 22, 2003, USPC released to plaintiff 284 pages of material. It withheld two documents consisting of six pages under exemptions 7(D) and 7(E). Declaration of Sharon Gervasoni ("Gervasoni Decl.") [Doc. No. 50, Ex. D] ¶ 26. USPC informed plaintiff that it had referred records to the EOUSA and BOP for a direct response to plaintiff.

By letter dated February 5, 2004, plaintiff requested records pertaining to Nancy Antonelli.  By letter of February 13, 2004, the USPC informed plaintiff that it had no file in the name of Nancy Antonelli.  In his administrative appeal, plaintiff requested a search of his parole file and that of James Valona.  By letter of April 26, 2004, the USPC informed plaintiff that it located no records responsive to his request for "'documents relating to Nancy Antonelli who you claim was an adverse witness at your parole revocation hearing."  Facts ¶ 58.  Plaintiff's administrative appeal was denied.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The FOIA requires a federal agency to release all records responsive to a request except those protected from disclosure by one or more of nine enumerated exemptions.  *See* 5 U.S.C. § 552(b).  This Court has jurisdiction under the FOIA "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B); *see Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 139 (1980).  The Court may award summary judgment in a FOIA case solely on the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

Defendants move for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies with respect to some requests for DEA and USPC records and, with respect to the released records, that they provided to plaintiff all reasonably segregable responsive documents.

### III.  DISCUSSION

1. <u>Criminal Division Records</u>

Plaintiff does not refute defendants' motion with respect to the specific withholdings from Criminal Division records. The asserted facts therefore are deemed admitted. *See* LcvR 7(h); Order of March 31, 2005 (advising plaintiff of same). The remaining issue is whether defendants are entitled to judgment as a matter of law with respect to these records.

*Count 47*

In Count 47 of the complaint, plaintiff requested records about himself. The Criminal Division located 19 responsive records. It released 17 records in their entirety and withheld the remaining two records under exemption 5.[2]  Declaration of Kathy Hsu ("Hsu Decl.") [Doc. No. 50, Ex. A] ¶ 43. One withheld record is a "four page memorandum dated June 21, 1978, from the Chicago Strike Force to the Criminal Division's Organized and Racketeering Section." *Id*. The other withheld record is a "two page memorandum dated January 13, 1984 from the Assistant Attorney General to the Solicitor General." *Id*.

Exemption 5 of the FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with

---

[2]  The Criminal Division has withdrawn its reliance on exemption 3 to withhold portions of a record. Hsu Decl. at 29, n.9.

the agency." 5 U.S.C. § 552(b)(5).  This provision applies to materials that normally are privileged in the civil discovery context, including those protected by the attorney work product privilege, the attorney-client privilege, and the deliberative process privilege.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also FTC v. Grolier, Inc.*, 462 U.S. 19, 26 (1983) ("The test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance."); accord *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  Ms. Hsu describes the withheld memoranda as internal staff recommendations with respect to the prosecution of plaintiff. They therefore satisfy exemption 5's threshold requirement of inter- or intra-agency records.  Ms. Hsu avers that the documents qualify for protection under the deliberative process and attorney work product privileges.  Her descriptions fully support this assertion   *See* Hsu Decl. ¶¶ 50-56.  Because exemption 5 protects from disclosure "the entire contents of [] documents" containing attorney work product, the Criminal Division properly withheld the two documents in their entirety.  *Judicial Watch v. Department of Justice*, 432 F.3d 366, 372 (D.C. Cir. 2005).  Summary judgment will be granted to defendants on Count 47.

*Count 48*

The Criminal Division located one record responsive to plaintiff's request for records pertaining to a grant of immunity for Daphenea Doreen Gibson, and released it in part.  Hsu Decl. ¶ 44.  It redacted the name of a "third-party individual referenced in connection with a grand jury investigation, " invoking exemption 3 in conjunction with exemptions 6 and 7(C).  *Id*. ¶ 66.  Exemption 3 protects from disclosure records that are "specifically exempted . . . by statute . . . provided that such statute either "(A) [requires withholding] in such a manner as to leave no

discretion on the issue," or "(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3); *see also Senate of the Commonwealth of Puerto Rico v. U. S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987). The Federal Rules of Criminal Procedure prohibit disclosure of "matters occurring before [a] grand jury." Fed. R. Crim. P. Rule 6 (e) (2); *see In re: Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 498-501 (D.C. Cir. 1998). The rule qualifies as a statute because it was affirmatively enacted by Congress. *See Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 867-68 (D.C. Cir. 1981). While acknowledging the existence of a "grand jury exception" to the general disclosure requirements of the FOIA, the Court of Appeals for the District of Columbia Circuit has limited the exception to material, which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice,* 823 F.2d at 582 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980)(en banc)).

According to Ms. Hsu, disclosure of the withheld name would reveal "the target of a grand jury investigation and thereby disclose the inner workings of the grand jury." Hsu Decl. ¶ 67. Defendant properly invoked exemption 3. Summary judgment will be granted to defendant on Count 48 of the complaint.

*Count 49*

In response to plaintiff's request for records pertaining to Edward Omar Spearman, the Criminal Division released five of six records located. Hsu Decl. ¶ 45. It withheld one record

consisting of "six pages of attorney handwritten notes . . . under Exemption 5, and in part pursuant to Exemptions 6 and 7(C)." *Id*. The "handwritten notes [were] drafted by a Criminal Division attorney regarding . . . whether to seek the death penalty in the Spearman prosecution." Hsu Decl. ¶ 50. The Court agrees that in addition to the notes qualifying as attorney work product, the "[h]andwritten notations are inherently deliberative, representing the most preliminary and frank impressions of the author." *Id*. ¶ 52. Defendant properly invoked exemption 5 to withhold this record in its entirety. *See supra* at 7.

In addition, the OIP, in processing records referred from the Criminal Division, withheld five memoranda in their entirety under exemption 5, and in part under exemptions 6 and 7(C). Hsu Decl. ¶ 45; Declaration of Melanie Ann Pustay [Doc. No. 50, Ex. C] ¶¶ 3-5. Ms. Hsu's description of these documents, *see* Hsu Decl. ¶ 45, is similar to documents the Court has determined to be properly protected under exemption 5 as deliberative process material and attorney work product. *See supra* at 7. They include "a twenty-three page 'preliminary' memorandum from [a section chief] to the Attorney General's Review Committee on Capital Cases. . . a four page, executive summary, memorandum from the Attorney General's Review Committee on Capital Cases to the Attorney General, . . . a three-page executive summary, memorandum from the Attorney General's Review Committee on Capital Cases to the Attorney General . . . a twenty-four page memorandum from the Attorney General's Review Committee on Capital Cases to the Attorney General . . . [and] a twenty-three page memorandum from the Attorney General's Review Committee on Capital Cases to the Attorney General. Hsu Decl. ¶ 50. According to Ms. Hsu, "[a]ll memoranda in the Spearman prosecution are integral parts of the recommendations to the Attorney General regarding whether the death penalty should be

sought. As such, they are replete with the attorneys' analyses, recommendations, assessments of facts and application of the law to the facts. None of these documents constitute a final agency decision." *Id*. ¶ 52. The OIP properly withheld the referred documents in their entirety under exemption 5. The Court therefore will not address OIP's justification for withholding portions of the records under exemptions 6 and 7(C). Summary judgment will be granted to defendants on Count 49.

### Count 50

Plaintiff requested records about James Valona. The Criminal Division properly documented the search and apparent destruction of such records. *See* Hsu Decl. ¶ 41 (Valona file processed in 1992 destroyed pursuant to the six-year records retention schedule). Plaintiff concedes this fact. *See* Pl.'s Facts Res. at 2; Antonelli Decl. at 3 ¶ 41. Summary judgment will be granted to defendants on Count 50.

2. DEA Records

### Count 57

Defendants assert that summary judgment is warranted on Count 57 of the complaint arising from plaintiff's request for DEA records about himself because plaintiff has not committed to paying the assessed search fee of $392. Plaintiff does not dispute DEA's claim with any contrary evidence. *See* Pl.'s Facts Res. at 2 ¶ 28 (neither admitting nor denying defendants' fact). The payment or waiver of assessed fees or an administrative appeal from the denial of a fee waiver request is a jurisdictional prerequisite to filing a lawsuit in the district court. *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 65 (D.C. Cir. 1990); *Trueblood v. U.S. Dept. of Treasury, I.R.S.*, 943 F. Supp. 64, 69 (D.D.C. 1996) (citing *Pollack v. Dep't of Justice*, 49

F.3d 115, 120 (4th Cir.), *cert. denied*, 518 U.S. 1032 (1995)); *accord Judicial Watch, Inc. v. F.B.I.*, 190 F. Supp.2d 29, 33 (D.D.C. 2002). Plaintiff has satisfied neither requirement. Summary judgment is granted to defendants on Count 57.

*Counts 58 and 59*

In response to plaintiff's request for records pertaining to Edward Omar Spearman (Count 58), DEA located six pages of information consisting of "a two (2) page Personal History Report, DEA Form 202 and a four (4) page case initiation Report of Investigation . . . ." Declaration of Leila I. Wassom ("Wassom Decl.") [Doc. No. 50, Ex. B] ¶ 30. According to Ms. Wassom, the pages contained third-party information about individuals other than Spearman. Spearman "is mentioned [] only in Block 42 of the Personal History Report as a source of supply for the third party," and the plaintiff "is mentioned on a single page." *Id*. ¶ 31. DEA withheld the pages in their entirety under exemptions 2, 7(C) and 7(F).

Exemption 2 of the FOIA exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). DEA properly justified withholding G-DEP (Geographical Drug Enforcement Program) codes under exemption 2, Wassom Decl. ¶ 38, inasmuch as the redaction of such information is routinely affirmed as relating to internal practices of no significant public interest. *See Lesar v. U.S. Department of Justice*, 636 F.2d 472, 485-86 (D.C. Cir. 1980); *Blanton v. U.S. Department of Justice,* 63 F. Supp.2d 35, 43 (D.D.C. 1999); *Albuquerque Publishing Company v. U.S. Department of Justice*, 726 F. Supp. 851, 854 (D.D.C. 1989).

Exemption 7(C) protects from disclosure records compiled for law enforcement purposes to the extent that their disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  It is undisputed that the responsive pages are law enforcement files.  *See* Wassom Decl. ¶¶ 34-37.  DEA properly justified withholding third-party identifying information of "individuals who were involved or associated with the plaintiff," *id*. ¶ 40, and DEA Special Agents and task force officers, *id*. ¶ 44, under exemptions 7(C) for the reasons Ms. Wassom asserts in paragraphs 44-47 of her declaration.  Such information is "categorically exempt" from disclosure under exemption 7(C), in the absence of an overriding public interest in its disclosure.  *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995).  Plaintiff has not asserted an overriding public interest in disclosing the otherwise exempt information.  Moreover, DEA properly justified withholding identifying information of DEA Special Agents and other law enforcement officers under exemption 7(F) for the reasons Ms. Wassom asserts in paragraphs 46-49.

In order to justify withholding records in their entirety, an agency must demonstrate that the "exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Mays v. Drug Enforcement Administration*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)) (other citation and internal quotation marks omitted).  DEA withheld the six pages in their entirety because "[a]fter segregating all witholdable [sic] information only the plaintiff's name would remain on the page.  Wassom Decl. ¶ 31.  DEA properly supported this withholding.

DEA located no records in response to plaintiff's request for records pertaining to Susan Antonelli a.k.a. Susan Cronin (Count 59).  Plaintiff challenges DEA's search for records

pertaining to Spearman and Susan Antonelli. When an agency's search for documents is challenged, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The agency prevails on a motion for summary judgment only where it shows "beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. United States Department of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). For purposes of this showing, the agency "may rely upon affidavits . . . , as long as they are relatively detailed and nonconclusory and  . . .  submitted in good faith." *Id*. (citations and quotations omitted). The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched. . . ." *Oglesby v. United States Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); accord *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

    DEA conducted a search of its NADDIS index using names (Edward Spearman, Susan Antonelli and Susan Cronin), social security numbers, and dates of birth. Wassom Decl. ¶ 28. NADDIS is the acronym for DEA's Narcotics and Dangerous Drugs Information System, which " is the index to and the practical means by which DEA retrieves investigative reports and information from" its Investigative Reporting and Filing System ("IRFS"). *Id*. ¶ 27. Because the IRFS "contains all administrative, general and investigative files compiled by DEA for law enforcement purposes, DEA determined that any responsive records were "reasonably likely to be found" in that filing system. *Id*. ¶ 25. Ms. Wassom also avers that "no other records system

within DEA would reasonably contain [such] information." *Id*. ¶ 26.  Plaintiff's disbelief in Ms. Wassom's averments, Antonelli Decl. ¶¶ 25-28, does not present a genuine issue of material fact with respect to the adequacy of the search.  The Court is satisfied from Ms. Wassom's description that DEA conducted searches reasonably calculated to locate all responsive records pertaining to Edward Omar Spearman and Susan Antonelli.  Summary judgment will be granted to defendants on the processing of DEA records.

    3.  <u>USPC Records</u>

*Count 51*

Defendants assert that Count 51 of the complaint arising from plaintiff's November 5, 2001, request for his records should be dismissed because plaintiff did not administratively appeal the final release of 493 pages of material, as he was so advised in the letter releasing records.  Gervasoni Decl., Ex. 8 at 3.  Plaintiff does not appear to dispute this fact.  *See* Pl.'s Facts Res. at 3 ¶ 51 ("Plaintiff agrees this happened.  He disagrees with the validity of the exemptions used to withhold information from him."); *but see* Antonelli Decl. at 4 ¶ (agreeing to having received the records "but not that I did not appeal.").  To the extent that plaintiff refutes defendants' declaration reasonably inferring that plaintiff did not file an administrative appeal, he has not presented any evidence of an appeal and therefore has failed to create a genuine issue of material fact with respect to the exhaustion question.  Summary judgment will be granted to defendants on Count 51.  Plaintiff's cross motion for summary judgment will be denied.

*Counts 52 and 53*

In Count 52 of the complaint concerning records requested about James Valona, plaintiff challenges only the USPC's "insufficient release in that the James Valona parole hearing tapes were not provided plaintiff."  Complaint at 31.  In Count 53, plaintiff raises similar concerns

about records requested concerning Nancy Antonelli. He questions the adequacy of the search in light of these alleged omissions. The USPC has not described its search for records responsive to either request. *See* Gervasoni Decl. ¶¶ 15-17 (processing of request for Valona records), ¶¶ 18-21 (processing of request for Antonelli records). The Court therefore has no basis to determine the sufficiency of the searches. *See supra* at 13 (discussing search standard). Summary judgment will be denied on Counts 52 and 53 without prejudice to reconsideration after supplementation of the record. In explaining the search, the USPC should include whether it reviewed plaintiff's parole file and the parole file of James Valona for references to Nancy Antonelli as plaintiff had requested in his administrative appeal letter. *See* Gervasoni Decl. ¶ 20 & Ex. 14.

Although plaintiff has not challenged the withholding of entire records from the release of records pertaining to Valona, the Court is required to make a segregability finding. *See Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999). The USPC withheld a five-page police report under exemption 7(D) and a one-page telephone slip under exemption 7(E). Gervasoni Decl. ¶ 26. Defendants have not provided any evidence, through Ms. Gervasoni's declaration or otherwise, that explains why these documents qualify for protection under the asserted exemptions. The Court therefore cannot determine the propriety of these withholdings without supplementation of the record.

### III.  CONCLUSION

For the preceding reasons, defendants' fifth motion for partial summary judgment is granted in part and denied in part. The motion is granted with respect to the processing of Criminal Division and Drug Enforcement Agency records and on Count 51 of the complaint

regarding USPC records. The motion is denied without prejudice with respect to the processing of all other USPC records. A separate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: March 17, 2006